UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN RODGERS,<br>    Plaintiff,<br>    v.<br>THOMAS J FITZGERALD, et al.,<br>    Defendants. | Case No. 14-cv-00985-DMR<br><br>**ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS**<br>Re: Dkt. No. 41 |

Before the court is Plaintiff John Rodgers's motion for attorneys' fees and costs. [Docket Nos. 41, 41-1.] In this action, Plaintiff brought suit against Defendants Thomas Fitzgerald, C Food Concepts Inc., dba Sizzler Restaurant, and Does 1-10 ("Defendants"), pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the California Health and Safety Code § 19955, *et seq.*, and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51, *et seq.* Second Amended Complaint ("SAC") [Docket No. 10]. The lawsuit challenged physical accessibility barriers at the Sizzler restaurant located at 1515 Fitzgerald Drive, Pinole, California.

For the following reasons, the court grants Plaintiff's motion in part, and awards $10,107.50 in attorneys' fees and $5,575.30 in costs.

**I.     FACTUAL BACKGROUND**

Plaintiff is an individual who is unable to independently stand or walk, and requires the use of a wheelchair for mobility. SAC at ¶ 5. Between March 2012 and March 2014, Plaintiff dined at the Sizzler Restaurant located at 1515 Fitzgerald Drive, Pinole, CA ("Sizzler" or "restaurant") at least ten times. SAC at ¶ 10.

On March 4, 2014, Plaintiff, represented by attorney Irene Karbelashvili, filed suit against Defendants, alleging denial of full and equal access to public facilities in violation of the ADA and

California law. Compl. [Docket No. 3]. Defendants are the owners, operators, lessors and/or lessees of the Sizzler Restaurant. SAC at ¶ 6. According to the Second Amended Complaint, Plaintiff encountered access barriers at Sizzler, including a poorly sloped wheelchair ramp as well as structural problems in the bathroom. SAC at ¶ 11-12.

Pursuant to this Court's General Order 56, a site inspection occurred on September 22, 2014, following a series of stipulated time extensions due to construction work at the restaurant. Karbelashvili Decl. ("Karb. Decl.") [Docket No. 41-2] at ¶ 10; Stipulations to Extend Time [Docket Nos. 19-22, 25-26]. At that time, Plaintiff's counsel and his expert, Mr. Bassam Altwal, inspected the Sizzler to identify accessibility barriers related to Plaintiff's disability. Karb. Decl. at ¶ 10.

The parties attended court-sponsored mediation on June 15, 2015 and reached a partial settlement of the case. Certification of Mediation [Docket No. 35]. On July 28, 2015, Plaintiff filed a notice of settlement stating that the parties had reached an agreement fully resolving the case, and requesting that all matters on the calendar be vacated. Notice of Settlement [Docket No. 37]. The settlement required Defendants to construct and install a new ramp connecting the existing sidewalk from the disabled parking spot to the front of the restaurant; to inspect and maintain disabled parking, door opening pressure, disabled seating, and proper reach range for fixtures in the restaurant's restroom; and to pay Plaintiff damages under the Unruh Act. Defs.' Opposition ("Opp'n.") [Docket No. 47] at 4; Reply [Docket No. 48] at 3-4.

On July 29, 2015, the court issued a sixty-day conditional dismissal. Order Dismissing Case [Docket No. 38]. In January 2016, the court granted the parties' stipulated request to put the matter back on calendar to allow Plaintiff to file this fee motion. Stipulation and Order [Docket Nos. 39, 40]. Plaintiff seeks $12,870.00 in attorneys' fees and $6,405.30 in costs, including expert fees, totaling $19,275.30. Motion for Attorney Fees ("Mot.") [Docket No. 41]; Karb. Decl. [Docket No. 41-2] at ¶ 14 (costs); Reply Karb. Decl. [Docket No. 48-1] ¶¶ 18, 19, Ex. E (attorneys' fees).

## II.   LEGAL STANDARDS

A prevailing party is one who "achieve[s] a material alteration of the legal relationship of

the parties" that is "judicially sanctioned." *Jankey v. Poop Deck*, 537 F.3d 1122, 1129–30 (9th Cir. 2008) (internal quotation marks omitted). Under the ADA, attorneys' fees are recoverable to a prevailing party. 42 U.S.C. § 12205. Because Congress passed the ADA in part to "ensure effective access to the judicial process for persons with civil rights grievances," the recovery of attorneys' fees "is the rule rather than the exception." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Jankey*, 537 F.3d at 1130 ("A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.") (internal quotation marks and citation omitted). Additionally, any person found in violation of the California Unruh Act "is liable for . . . any attorney's fees that may be determined by the court. . . ." Cal. Civ. Code § 52(a).

The calculation of a reasonable fee award is a two-step process. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, a court begins by calculating the "lodestar figure," or presumptive award, by multiplying the hours reasonably spent on the litigation by the attorney's reasonable hourly rate. *See Hensley*, 461 U.S. at 433. Second, the court may enhance or reduce the lodestar figure based on the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975),[1] that were not subsumed in the initial lodestar determination. *Fischer*, 214 F.3d at 1119.

The ADA also permits a district court, in its discretion, to award "litigation expenses" and "costs" to a prevailing party. 42 U.S.C. § 12205. "Litigation expenses" include reasonable out-of-pocket expenses that would normally be charged to a fees-paying client, such as expert witness fees, certain travel expenses, and the preparation of exhibits. *Lovell v. Chandler*, 303 F.3d 1039, 1058–59 (9th Cir. 2002) (citations omitted); *see also Kalani v. Starbucks Corp.*, No. 13-CV-

---

[1] The *Kerr* factors are: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

00734-LHK, 2016 WL 379623, at *4 (N.D. Cal. Feb. 1, 2016).

## III. ANALYSIS

### A. Entitlement to a Fee Award

The first issue is whether Plaintiff is a "prevailing party" under the terms of the ADA. Under applicable Ninth Circuit law, a plaintiff "prevails" when he or she enters into a legally enforceable settlement agreement that requires the defendant to do something it would not otherwise be compelled to do:

> "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The Court explained that "a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do.

*Fischer*, 214 F.3d at 1118 (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 (1992)).

To be a prevailing party under the ADA, a litigant must meet two criteria: he or she must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned.[2] *Jankey*, 537 F.3d at 1129–30 (quoting *P.N. v. Seattle Sch. Dist. No. 1,* 474 F.3d 1165, 1172 (9th Cir. 2007)). In other words, the alteration must have a "judicial imprimatur." *Jankey*, 537 F.3d at 1130 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 605 (2001)).

Defendants argue that Plaintiff did not "prevail" because Defendants were already contractually obligated to bring the facility into compliance with the ADA as part of Defendant C Foods Concepts' purchase of the restaurant in 2011. According to Defendants, they were required to renovate the restaurant to make it ADA compliant under the 2011 purchase agreement; but "due to the costs of construction and renovation timelines, the remodel was delayed until it was economically feasible." Lutfi Decl. [Docket No. 47-1] at ¶ 3. However, Defendants present no evidence that they had actually taken any steps to comply with their contractual obligation to

---

[2] Defendants did not raise an argument about whether the material alteration of the legal relationship between the parties was "judicially sanctioned." *Jankey*, 537 F.3d at 1129-30. The court therefore assumes that the existence of judicial imprimatur is not at issue in this case.

4

renovate the restaurant to make it ADA compliant in the years after the 2011 purchase and prior to the filing of Plaintiff's lawsuit in 2014.[3] Plaintiff filed the present action in March 2014, alleging that he visited the Sizzler restaurant at least ten times from March 2012-2014. Initial Compl. [Docket No. 3] at ¶ 10.

In *Barrios v. California Interscholastic Federation*, 277 F. 3d 1128 (9th Cir. 2002), the Ninth Circuit reversed the district court's finding that the "relief plaintiff sought for himself already had been granted prior to the filing of his complaint" where the defendant in an ADA case had made assurances that it would make certain accommodations prior to the filing of plaintiff's suit, but nevertheless failed to act in accordance with those assurances. *Id.* at 1135. The Ninth Circuit found that the settlement agreement, which included both a legally enforceable policy change and monetary damages, altered the relationship between the plaintiff and the defendant such that the plaintiff was a prevailing party for purposes of the ADA's attorneys' fees provision.

Here, the settlement agreement requires Defendants to construct a new ramp and landing, among other accessibility improvements. They are also obligated to pay Plaintiff a sum of money in statutory damages under the Unruh Act.[4] Opp'n. at 4; Reply at 3-4. Plaintiff can enforce the terms of the settlement agreement against Defendants for both the accessibility improvements and the monetary damages. *See also Hernandez v. Taqueria El Grullense*, 2014 WL 1724356, *3 (N.D. Cal. April 30, 2014) (plaintiff was prevailing party under the ADA where parties reached agreement on injunctive relief, including ramps and accessible unisex bathroom, and $10,000 in damages). The court therefore finds that Plaintiff is a prevailing party under the ADA and is entitled to statutory attorneys' fees and costs.[5]

---

[3] The Lutfi Declaration merely states that the restaurant closed in June of 2014 and the renovated restaurant was re-opened in August of 2014. [Docket No. 47-1 at ¶ 7.] The declaration is silent as to the timing of the initiation of the renovation or any other ADA compliance renovations undertaken after the December 2011 purchase and prior to the June 2014 renovations.

[4] While the exact terms of the settlement agreement are confidential, both parties included general information about what the settlement required in their briefing on this motion.

[5] Having prevailed under the ADA, Plaintiff is also considered a prevailing party under the Unruh Act. *Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837, 847 (9th Cir. 2004). As a prevailing party entitled to attorneys' fees and costs under the ADA, the Court need not separately address entitlement to the same under the Unruh Act. *See, e.g., Elder v. Nat'l Conference of Bar*

### B. Reasonable Lodestar

#### 1. Hourly Rate

The fee applicant bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895, n. 11 (1984). "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990). Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1277-78 (N.D. Cal. 2014) (citing *Nadarajah v. Holder,* 569 F.3d 906, 917 (9th Cir. 2009)). As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992).

"As a first principle, the court must recognize that a consideration of 'quality' inheres in the 'lodestar' award: counsel who possess or who are reputed to possess more experience, knowledge and legal talent generally command hourly rates superior to those who are less endowed." *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (citation omitted).

Plaintiff requests a rate of $450 per hour for attorney Karbelashvili, who has eleven years of experience, including five years of experience in disability access litigation. Karb. Decl. at ¶ 3. Curiously, Plaintiff's papers are almost completely devoid of evidence regarding Karbelashvili's skill, experience, and reputation. In support of the requested rate, Plaintiff submitted the following information:[6] 1) Karbelashvili's bare and conclusory declaration that she has

---

*Examiners*, No. C 11-00199 SI, 2011 WL 4079623, at *2 n.1 (N.D. Cal. Sept. 12, 2011).

[6] Plaintiff also submitted the declaration of Richard Pearl regarding attorneys' fees filed in *Armstrong v. Brown*, 857 F. Supp. 2d 919 (N.D. Cal. March 4, 2011) (Docket No. 1851) with his Reply. Reply Karb. Decl. Ex. D. The Pearl declaration does not discuss Karbelashvili, and Plaintiff did not present sufficient information about Karbelashvili's skills, experience, or expertise to render the Pearl declaration meaningful here. Moreover, and most importantly, Plaintiff submitted the Pearl Declaration with his Reply, and Defendants did not have an opportunity to respond to it. Defendants objected to the Pearl Declaration. Defs.' Obj. to Pl.'s

1  "successfully litigated" and resolved around one hundred ADA access cases; 2) the hourly rates

2  awarded to *other* attorneys in complex (i.e., not comparable) ADA cases within this district; and

3  3) the *Laffey* matrix.[7]  Plaintiff argues that the requested rate of $450/hour is less than the

4  prevailing market rate, and is therefore reasonable.

5        Plaintiff obfuscates the question of an appropriate hourly rate for Karbelashvili by focusing

6  on ADA fee awards in vastly more complex matters.  The present case is a relatively simple one.

7  Rather than citing to any number of comparable single-plaintiff accessibility cases within this

8  district, Plaintiff points to impact cases that are readily distinguishable in that they involved far

9  more complicated legal or factual issues.[8]  Such fee awards bear little on the proper hourly rate for

---

Reply [Docket No. 50] (objecting to Exhibit D).  Plaintiff should have submitted the Pearl Declaration with his moving papers.  The court therefore will not rely upon it.

[7] In the Ninth Circuit, the *Laffey* matrix is not the starting point for determining reasonable attorneys' fees.  *Californians for Disability Rights v. California Dep't of Transp.*, No. C 06-05125 SBA MEJ, 2010 WL 8746910, at *3 (N.D. Cal. Dec. 13, 2010), *report and recommendation adopted sub nom. Californians for Disability Rights, Inc. v. California Dep't of Transp.*, No. C 06-5125 SBA, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) ("*Caltrans*") (citing *Freitag v. California Dept. of Corrections,* C 00–2278 TEH, 2009 WL 2485552, at *2 (N.D. Cal. 2009).  Rather, reasonable rates are "to be calculated according to the prevailing market rates in the relevant community, with close attention paid to the fees charged by lawyers of reasonably comparable skill, experience, and reputation."  *Id.*

[8] *Caltrans*, was a complex class action litigated over the course of three years.  It secured significant benefits for individuals across the state through a settlement which included, among other things: "(1) a funding commitment of $1.1 billion over the next thirty years to eliminate barriers and improve access for Class members; (2) a monitoring procedure, which will include the hiring of an access consultant to oversee compliance for the first seven years, and mandatory annual reporting by Caltrans for the next thirty years; (3) a grievance procedure for public complaints relating to access issues and Caltrans responses thereto; and (4) payment of attorneys' fees (a minimum of $3.75 million to a maximum of $8.75 million) for past work and future compliance services."  *Caltrans*, 2010 WL 8746910, at *1.  Within that context, and after a thorough analysis, the court approved the following hourly rates corresponding with the following years of experience: $570/ten years of experience; $560/nine years of experience; $535/seven years of experience.  *Id.* at *5.

  *Armstrong v. Schwarzenegger*, Case No. 4:94-cv-02307 CW (N.D. Cal. June 29, 2008) also dealt with a complex class action.

  Similarly, in *National Federation of the Blind v. Target Corporation*, No. C 06-01802 MHP, 2009 WL 2390261, at *1 (N.D. Cal. Aug. 3, 2009), the attorneys' fees award occurred after "a period of intense litigation" culminating in the certification of a national plaintiff class, with a $6 million settlement fund and significant injunctive relief and monitoring.

  In *Elder v. National Conference of Bar Examiners*, No. C 11-00199 SI, 2011 WL 4079623 (N.D. Cal. Sept. 12, 2011), following the preliminary injunction order achieved in that case, the

7

Plaintiff's counsel in this case.

Karbelashvili did not provide any information regarding her self-described "successfully litigated" ADA access cases, such as case names, citations, or results achieved. She provided no information about hourly rates she has received, whether directly from clients, in settlement, or through litigation of prevailing party fee motions. She did not submit a single declaration attesting to her skill, experience or reputation.

There is reason to harbor serious doubts about Karbelashvili's skill, experience and reputation. At the hearing on this motion, and only in response to direct questions from the court, Karbelashvili revealed that she has been awarded attorneys' fees in two ADA access cases after completed bench trials. The fee awards are recent; both are from 2015. In an ADA access case in Sacramento County Superior Court, *Nechitaylo v. Norwood Petroleum*, Case No. 34-2012-00127372, the court noted plaintiff's dearth of "evidence regarding reasonable rates charged by comparable attorneys for comparable work." The court reduced Karbelashvili's requested hourly rate of $375 to $300, "in light of the evidence presented and the court's observation of the attorneys' preparation and conduct during trial." Karbelashvili received an even more drastic rate reduction in *Nechitaylo v. Wedum Family Limited Partnership*, No. 2:13-CV-01001-JAM-JFM, 2015 WL 8479627 (E.D. Cal. Dec. 10, 2015). After completion of a bench trial, Judge John A. Mendez slashed Karbelashvili's requested hourly rate of $300 to $150. *Id.* at *1. Judge Mendez noted that based on his "observations throughout this litigation, Ms. Karbelashvili demonstrated skill far below the level expected of an attorney with over ten years of experience," and stated that the success obtained in the litigation was "in spite of, and not because of, Ms. Karbelashvili's

---

National Conference of Bar Examiners ("NCBE") began offering disability accommodations that were similar to the ones the court ordered NCBE to offer to plaintiff. *Id.* at *5. Within this context the court awarded the hourly rates of $640 for an attorney with eighteen years of experience and $535 for an attorney with eight years of experience. *Elder v. Nat'l Conference of Bar Examiners*, No. C 11-00199 SI, (N.D. Cal. Sept. 12, 2011) (Docket No. 99).

Plaintiff also cites to *Enyart v. National Bar Examiners*, Case No. 3:09-cv-05191-CRB (JCS), as awarding fees. However, the plaintiff withdrew her motion for attorneys' fees prior to a court ruling because the parties reached a settlement. *Id.* at (N.D. Cal. June 1, 2012), Docket No. 214.

conduct at trial." *Id.*[9]

The Ninth Circuit has noted that "[t]he district court is in the best position to determine in the first instance the number of hours reasonably expended in furtherance of the successful aspects of a litigation and the amount which would reasonably compensate the attorney." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (quoting *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1211 (9th Cir. 1986), *amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987)). This court has had virtually no first hand opportunity to observe and assess Karbelashvili's work. The parties reached a settlement prior to the initial case management conference in this case. As noted above, Karbelashvili presented almost no relevant evidence to support her requested rate. For this reason, the rate determinations by two jurists who recently observed Karbaleshvili's work in similar ADA access cases is particularly enlightening.

Given the pointed criticism by both judges, it would not be reasonable for this court to assume that Karbelashvili's hourly rate should fall within the range awarded to other counsel doing similar work in this district, with a similar number of years of lawyering experience. In light of the lack of evidence supporting Karbelashvili's requested $450 hourly rate, the hourly rates of $300 per hour and $150 per hour awarded to Karbelashvili in recent ADA trials, and the dearth of information provided by Plaintiff on Karbelashvili's experience, skill, reputation, and expertise, the court determines that $325 per hour is an appropriate rate for Karbelashvili's time. Karbelashvili recently was awarded a $300 hourly rate for work performed in the Sacramento market. The $325 hourly rate awarded by this court reflects the higher prevailing market rate for work performed in this judicial district.

2. **Reasonable Hours**

Plaintiff requests fees for a total of 31.6 attorney hours, including 15.1 hours for work on the merits of the case (pre-filing investigation through settlement and dismissal);[10] 16 hours for

---

[9] At the hearing, Karbelashvili informed the court that Judge Mendez's ruling regarding her hourly rate is on appeal.

[10] This includes counsel's work conducting investigation and inspections of the facility, drafting court, mediation and settlement documents, consulting with Plaintiff and his expert, and attending the court sponsored mediation. Karb. Decl. Ex. A [Docket No. 41-3].

"fees on fees"; and 0.5 hours for consulting with Plaintiff's expert several months after the case was dismissed.

Defendants have the burden to rebut the fee request and to demonstrate any substantial indication that the hours billed were "excessive, redundant, or otherwise unnecessary . . ." *Blackwell*, 724 F. Supp. 2d at 1079 (citing *Hensley,* 461 U.S. at 434). Defendants do not appear to challenge the 20.6 hours claimed for Karbelashvili's work on the merits and through the opening brief on this fees motion. Singh Decl. at ¶ 7. However, as discussed further below, Defendants do raise a general objection to additional fees sought through Plaintiff's reply brief.[11]

The court has reviewed the requested hours to ensure they are reasonable. *Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1385 (9th Cir. 1984). Plaintiff provides no explanation why continued expert consultation for 0.5 hours in November 2015 was needed after a full settlement had been reached and a dismissal had been entered in July 2015.[12] Karb. Decl. [Docket No. 41-3]. This request is not supported by sufficient evidence and is denied. After review of docket and the records submitted in this case, the court finds that the remaining 31.1 hours are reasonable. In conclusion, the court awards Plaintiff a total of $10,107.50 in attorneys' fees (31.1 hours at $325/hour).

**C.        Costs**

Defendants do not object to Plaintiff's request for reimbursement of fees for filing and service of process. The court finds that these costs are reasonable and awards them in full, in the amount of $595.30.

Defendants object to the $5,820.00 in requested expert fees for Bassam Altwal. Expert consultant fees may be awarded to a prevailing party under the ADA. *Blackwell,* 724 F. Supp. 2d

---

[11] Plaintiff's opening brief requested 20.6 hours for Karbelashvili's work (15.1 for work on the merits; 5 for work on the fees motion; and 0.5 for consulting with Plaintiff's expert several months after the case was dismissed). Karb. Decl. [Docket No. 41-2] at ¶ 4; Ex. A. Plaintiff updated his request to seek an additional 8 hours for drafting the reply brief, and three hours for preparation, travel, and attendance at the hearing on this motion. Reply Karb. Decl. [Docket No. 48-1] ¶¶ 18, 19, Ex. E.

[12] The time entry states, in full: "Discussion w/ Plaintiff's expert re findings in inspection report and the proper code year that applies with relation to construction history." Karb. Decl. [Docket No. 41-3] Ex. A. (Nov. 4, 2015 entry).

at 1073; *Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 WL 2447862 (N.D. Cal. June 5, 2013) (ADA case awarding plaintiff $3,313 for access consultant fees, where expert conducted two site inspections and created two reports). In support of his request for expert fees, Plaintiff has provided a copy of Altwal's report enumerating access problems identified during the site inspection, a printout from Altwal's website describing some of his professional experience, and his invoice for time spent on the matter. *See* Altwal Decl. Exs. 1, 2, 3 [Docket Nos. 41-6, 41-7, 41-8].

Defendants argue that Altwal is a "hired gun" and that "his claimed charges should be reduced by 40%." However, Defendants do not appear to challenge the requested hourly rate of $240 for expert services and $120 for travel time. The court finds that the requested rates are reasonable. *See Wedum Family Ltd. P'ship*, 2015 WL 8479627, at *3 (awarding Altwal $120 per hour for travel time and $240 per hour for professional services).[13]

Unfortunately, instead of providing more detailed factual support to buttress the amount of Altwal's claimed fees, Plaintiff relies on conclusory statements: "I anticipate Defendants will object to the amount of expert fees incurred in the prosecution of this case. However, the expert fees incurred are reasonable, because Plaintiff's expert, Bassam Altwal, not only attended the joint inspection and mediation session, but he also provided necessary assistance during the pre-filing investigation stages of this case and researched the building history of the subject property." Karb. Decl. [Docket No. 41-2] at ¶ 15.

The court now reviews the requested expert costs to assess whether they are reasonable.

### a.     Travel Time

Over a third of Altwal's billed hours are for travel time (11 out of 29.75 hours). Much of this time is not adequately supported by Altwal's billing records or declaration. Courts in this

---

[13] Defendants make specific challenges to two time entries -- a one-hour conversation between Atwal and Karbelashvili on February 27, 2014, and the five hours for Atwal to write his report. Opp'n. at 2; Singh Decl. at ¶¶ 9, 10. Defendants' attacks on these specific billings are unpersuasive, as they are based on no more than the subjective opinion of Defendants' counsel that "experienced and lawyers rarely 'talk' [for one hour] on one matter" and that "an assistant or clerical person could [write Altwal's report] in 30 minutes." Singh Decl. at ¶ 9-10.

11

1   district have recognized that defendants should not necessarily be responsible for a plaintiff's
2   choice to employ an access consultant requiring extensive travel time. *Hernandez*, 2014 WL
3   1724356, at *15 (finding access expert's requested fees unreasonable where they included 10
4   hours for travel to and from two site inspections and the mediation, deducting 8 hours from the
5   requested fees); *Rodriguez*, 53 F. Supp. 3d at 1294 (reducing expert's requested fees by 25%, in
6   part, based on expert's excessive billing for travel time). Indeed, at least one other court has found
7   that Altwal's billing for travel time is excessive. *See Wedum Family Ltd. P'ship*, 2015 WL
8   8479627 at *3 (finding Altwal's travel time excessive and reducing the hours by 50%).

Some of Altwal's travel records are problematic. Altwal inexplicably billed three hours to travel from his San Francisco office to attend the June 2015 mediation at the Oakland Courthouse, when his travel time to visit the Sizzler facility in Pinole, California (which is approximately double the distance from his San Francisco office address) is only two hours. Altwal Decl., Ex. 3 [Docket No. 41-8] (June 15, 2015; Sept. 22, 2014; Feb. 23, 2014 entries). A number of Altwal's other travel billing entries are vague. For example they do not state where Altwal was travelling to, why the travel was necessary, or any other specific information necessary for the court to determine whether the travel time was reasonable. Altwal inexplicably billed two hours in travel time for a half-hour meeting with Karbelashvili, but the time entry "Meeting with lawyer re: access problem at Sizzler restaurant in Pinole" is vague and does not provide any explanation for why such a meeting could not be handled telephonically, especially in light of the fact that Altwal and Karbelashvili have worked together on many ADA access cases. Altwal Decl., Ex. 3 (Feb. 11, 2014 entry).

The court finds that six hours of travel time is reasonable for this case in light of Altwal's inspection of the site and attendance at the mediation. The court awards Altwal six hours of travel time at his hourly rate for travel of $120, for a total of $720.00.

### b.     Mediation

While the court notes that it may have been appropriate or helpful to have Altwal attend the mediation, Plaintiff provides no explanation as to why his expert attended the mediation for more hours than his lawyer. *See* Karb. Decl., Ex. A (June 15, 2015 entry: 4 hours for attending

12

1   mediation); Altwal Decl., Ex. 3 (June 15, 2015 entry: 5 hours for mediation).  Therefore, the court

2   deducts Altwal's additional hour for attending the mediation.  The court finds that the remaining

3   17.75 hours for professional services are reasonable.

4       The court awards Plaintiff $5,575.30 in costs, broken down as follows:

- Expert Professional Services:  $240/hour x 17.75 hours = $4,260.00
- Expert Travel Time: $120/hour x 6 hours = $720.00.
- Filing Fees and Service of Process: $595.30

**D.     Defendants' Objections to Evidence Submitted on Reply**

Defendants objected to evidence filed with Plaintiff's reply solely on the grounds that it is "improper for Plaintiff to submit any evidence in his reply that was not initially submitted in his Motion for Attorney's Fees." [Docket No. 50.]

The Local Rules specifically contemplate submission of evidence with a Reply and provide an opportunity for an opposing party to object.  Under the Civil Local Rule 7-3(c), any reply to an opposition may include affidavits or declarations, as well as supplemental brief or memorandum.  Civil L. R. 7-3(c).  If new evidence has been submitted in the reply, the opposing party may file an Objection to Reply Evidence stating its objections to the new evidence within seven days after the reply was filed.  Civ. L. R. 7-3(d)(1).

The court now addresses each objection.  First, Defendants object to the Reply Declaration of Irene Karbelashvili and Exhibit E, an invoice for Karbelashvili's attorney hours spent on the reply brief.  Courts routinely consider the amount of hours worked through the reply brief in considering a motion for attorneys' fees.  *See, e.g., Destefano v. Zynga, Inc.*, Case No. 12-cv-04007-JSC, 2016 WL 537946, at *22 n. 13 (N.D. Cal. Feb. 11, 2016); *White v. Colvin*, Case No. 14-cv-05584 EMC, 2015 WL 7429392, at *2 n. 2 (N.D. Cal. Nov. 23, 2015).  The court may properly consider the Karbelashvili Reply Declaration and Exhibit E to substantiate the attorney time spent on the reply brief.

Next, Defendants object to the Reply Declaration of Bassam Altwal and Exhibit 4, an order by Judge Gonzalez Rogers in *Rodgers v. Claim Jumper Restaurant, LLC, et al.*, Case No. 4:13-cv-05496-YGR (N.D. Cal. 2013) which approves Altwal's requested rates.  Although it is

improper to raise new issues or submit new facts on reply, *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996), here, the Reply Altwal declaration and Exhibit 4 simply respond to the assertions raised by Defendants in their opposition brief. *See* Opp'n. at 2; Singh Decl. at ¶ 8; Altwal Reply Decl.; Ex. 4. Therefore, the court properly may consider this material.

The court does not rely upon the other materials submitted by Plaintiff with his reply brief. Defendants' objections to these materials are therefore denied as moot.

### IV.  CONCLUSION

Plaintiff's motion for attorneys' fees and costs is granted in part. The court awards Plaintiff $10,107.50 in attorneys' fees and $5,575.30 in costs. Defendants shall pay this award to Plaintiff within 30 days of the date of this order.

**IT IS SO ORDERED.**

Dated: September 7, 2016

Donna M. Ryu
United States Magistrate Judge